Jaimie Mak (SBN 236505)
Of Counsel
jmak@richmanlawgroup.com
Kim Richman (*pro hac vice forthcoming*)
krichman@richmanlawgroup.com
535 Mission Street
San Francisco, CA 94105
Telephone: (718) 705-4579
Facsimile: (718) 228-8522

*Attorneys for Plaintiff Quynh Phan and Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUYNH PHAN, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SARGENTO FOODS INC., <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff QUYNH PHAN ("Phan" or "Plaintiff"), a resident of Santa Clara County, California, individually and on behalf of other similarly situated individuals, by and through his counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendant SARGENTO FOODS INC. ("Sargento" or "Defendant") regarding the deceptive labeling, marketing, and sale of Sargento's dairy cheese products ("the Products"[1]) with the claim

---

[1] The following Sargento products are deceptively labeled and advertised as alleged in this Complaint: Monterey Jack Natural Cheese, Natural Double Cheddar Cheese, Natural White Cheddar Cheese, Colby Natural Cheese, Colby-Jack Natural Cheese, Medium Cheddar Cheese, Medium Natural Cheddar Cheese, Havarti Natural Cheese, Pepper Jack Natural Cheese, Swiss

"No Antibiotics" when the Products are made with milk from cows raised with antibiotics and when the Products sometimes contain antibiotics, and alleges the following based upon information, belief, and the investigation of his counsel:

## **INTRODUCTION**

1.      Consumers are increasingly interested in and aware of how their food is produced due to concerns about public health, the environment, and animal welfare.

2.      In particular, consumers are concerned that the use of antibiotics in industrial agriculture contributes to the growing threat of antibiotic resistance. Consumers are also concerned about the use of antibiotics in industrial animal agriculture because the animals, including dairy cows, are subjected to treatment and conditions that inevitably make them sick.

3.      According to the Centers for Disease Control and the World Health Organization, antibiotic resistance—the ability of germs to defeat the drugs designed to kill them—is one of the

---

Natural Cheese, Baby Swiss Natural Cheese, Aged Swiss Natural Cheese, Asadero Natural cheese, Sharp White Cheddar Cheese, Mild Yellow Natural Cheddar Cheese, Sharp Natural Cheddar Cheese, Extra Sharp Natural Cheddar Cheese, 4 State Natural Cheddar Cheese, Natural Double Cheddar Cheese, Taco Natural Cheese, Nacho & Taco Natural Cheese, Authentic Mexican Natural Cheese, Provolone with Natural Smoke Flavor Natural Cheese, 4 Cheese Pizzeria Natura Cheese, 4 Cheese Mexican Natural Cheese, Cheddar Jack Natural Cheese, Mozzarella Natural Cheese, Parmesan Natural Cheese, 4 Cheese Italian Natural Cheese, 18-Month Aged Natural Cheddar Cheese, Aged Italian Blend Natural Cheese, 14-Month Aged Parmesan Natural Cheese, Tomato & Basil Jack Cheese, Smokehouse Cheddar Natural Cheese, Garlic & Herb Jack Cheese, Reduced Fat Pepper Jack Natural Cheese, Reduced Fat Medium Natural Cheddar Cheese, Reduced Fat Colby Jack Natural Cheese, Fresh Asiago Natural Cheese, Gouda Natural Cheese, Muenster Natural Cheese, Sharp, Sharp Non-Smoked Provolone Natural Cheese, Cheddar-Mozzarella Natural Cheese, Aged Gouda Natural Cheese, Sharp White Natural Cheese, Aged White Natural Cheddar Cheese, Part-Skim Mozzarella Natural Cheese, Colby-Pepper Jack Natural Cheese, and Ricotta Natural Cheese. Discovery may reveal that additional Sargento products should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such products.

2                          CLASS ACTION COMPLAINT

greatest and most urgent public health risks of our time.[2] More than 2.8 million antibiotic-resistant infections occur in the United States each year, and more than 35,000 people die as a result.[3] The problem of antibiotic resistance has only been exacerbated by the COVID-19 pandemic due to the widespread use of antibiotics in patients diagnosed with COVID-19.[4]

4.      Antibiotics are used extensively in factory-style dairy production because the treatment and conditions to which cows are subjected impair their health and cause infections. The majority of dairy cows in the United States are confined indoors and not allowed to graze on pasture.[5] Teat trauma caused by milking machines, genetic selection for high milk yields, and unsanitary conditions make cows susceptible to clinical mastitis from pathogenic bacteria, which is the most commonly reported health problem in the dairy industry.[6]

5.      The use of antibiotics in industrial agriculture causes residues of antibiotics and antibiotic-resistant bacteria to emerge on agricultural lands, move through the environment,

---

[2] *Antibiotic Resistance Threats in the United States, 2019*, Centers for Disease Control (Dec. 2019) at 3, https://www.cdc.gov/drugresistance/pdf/threats-report/2019-ar-threats-report-508.pdf; *In the face of slow progress, WHO offers a new tool and sets a target to accelerate action against antimicrobial resistance*, World Health Organization (June 18, 2019), https://www.who.int/news/item/18-06-2019-in-the-face-of-slow-progress-who-offers-a-new-tool-and-sets-a-target-to-accelerate-action-against-antimicrobial-resistance.

[3] *Antibiotic Resistance Threats in the United States, 2019*, Centers for Disease Control (Dec. 2019) at vii, https://www.cdc.gov/drugresistance/pdf/threats-report/2019-ar-threats-report-508.pdf.

[4] The COVID-19 pandemic has resulted in increased antibiotic use because COVID-19 patients are often prescribed antibiotics to prevent secondary bacterial infections, and many COVID-19 patients receive antibiotics even when not clinically indicated. Steffanie A. Strathdee et al., *Confronting antimicrobial resistance beyond the COVID-19 pandemic and the 2020 US election*, 396 Lancet 1050 (Sept. 29, 2020), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)32063-8/fulltext?dgcid=raven_jbs_etoc_email.

[5] *An HSUS Report: The Welfare of Cows in the Dairy Industry*, The Humane Society of the United States at 3, https://www.humanesociety.org/sites/default/files/docs/hsus-report-animal-welfare-cow-dairy-industry.pdf (last visited Dec. 21, 2020).

[6] *Id.* at 5.

contaminate waterways, and reach consumers in food.[7] Antibiotics do not have to end up in food to pose a public health risk. Current science shows that a major cause of the development and spread of antibiotic resistance in human pathogens is environmental contamination from agricultural use.[8]

6.      Sargento is one of the United States' largest producers of dairy cheese products, which it sells under the Sargento name brand.[9]

7.      Sargento knows that consumers seek out and wish to buy cheese products made with milk from cows raised without antibiotics. Sargento also knows that consumers will pay more for, or buy more of, such products than they would products made with milk from cows raised with antibiotics.

8.      To capture this growing market of consumers, Sargento labels the retail packaging of the Products with the label "No Antibiotics."

9.      The "No Antibiotics" claim is false, deceptive, and misleading. The Products are produced with milk from cows who receive antibiotics. In addition, at least some of the Products,

---

[7] Terry Shistar & Carla Curle, *Agricultural Uses of Antibiotics Escalate Bacterial Resistance*, Beyond Pesticides (Winter 2016-17), https://www.beyondpesticides.org/assets/media/documents/journal/bp-36.4-w17-Antibiotics-Cited2.pdf.

[8] Terry Shistar, *A Is for Apples, Alar, and Antibiotics*, Beyond Pesticides, https://www.beyondpesticides.org/assets/media/documents/infoservices/pesticidesandyou/documents/AisforApplesCited.pdf (last visited Dec. 21, 2020); *see also* Thomas F. O'Brien, *Emergence, Spread, and Environmental Effect of Antimicrobial Resistance: How Use of an Antimicrobial Anywhere Can Increase Resistance to Any Antimicrobial Anywhere Else*, Clinical Infectious Diseases S78-84 (June 1, 2002), https://pubmed.ncbi.nlm.nih.gov/11988877/; J. Jutkina et al., *Antibiotics and Common Antibacterial Biocides Stimulate Horizontal Transfer of Resistance at Low Concentrations*, 616-617 Sci. of the Total Env. 172-78 (Mar. 2018), https://pubmed.ncbi.nlm.nih.gov/29112840/.

[9] *About Us,* Sargento, https://www.sargento.com/our-company/about-us (last visited Dec. 21, 2020).

1    in their final form as sold to consumers, still contain detectable levels of antibiotics, which are

2    then ingested by consumers.

3        10.    Reasonable consumers, seeing Sargento's prominent "No Antibiotics"

4    representation, would expect that the Products are made without the use of antibiotics and,

5    therefore, never contain antibiotics.

6        11.    In sum, Sargento is deceiving consumers into believing the Products are made

7    without the use of antibiotics, when in fact they are made with milk from cows who are treated

8    with antibiotics, and that the Products contain no antibiotics, when in fact some of them do contain

9    antibiotics.

10       12.    By deceiving consumers about the nature and quality of the Products, Sargento is

11   able to sell a greater volume of the Products, to charge higher prices for the Products, and to take

12   away market share from competing products, thereby increasing its own sales and profits.

13       13.    Consumers lack the information and scientific knowledge necessary to determine

14   whether the Products are in fact made with "No Antibiotics" and to know or to ascertain the true

15   quality of the Products.

16       14.    As a result of its false and misleading labeling and advertising, and omissions of

17   fact, Sargento was and is able to sell the Products to consumers in the United States, including in

18   the State of California, and to realize sizeable profits.

19       15.    During any applicable statute of limitations period, Plaintiff and members of the

20   Class (described below) saw Sargento's "No Antibiotics" misrepresentations when purchasing

21   the Products. Plaintiff and other Class members paid more for the Products based upon the

22   misrepresentations than they otherwise would have paid, and/or purchased the Products, or

23   purchased more of the Products, when they would not have if they had known the truth about

CLASS ACTION COMPLAINT

Sargento's antibiotic use practices. As a result, Plaintiff and Class members suffered injury. Contrary to representations on the Products' labeling and advertising, consumers received Products made with the use of antibiotics and Products that themselves sometimes still contained those antibiotics.

16. Sargento's false and misleading representations and omissions violate numerous laws, including the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785; California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210, as well as other state consumer protection statutes and common law.

17. Because Sargento's labeling and advertising of the Products are false, deceptive, and misleading as to the true nature and quality of the Products, Plaintiff brings this deceptive advertising case on behalf of a class of consumers who purchased the Products in the United States, including a subclass who purchased the Products in Alabama, California, Connecticut, Florida, Illinois, Michigan, Minnesota, Missouri, New Jersey, and New York. Plaintiff seeks relief including actual damages, interest, costs, reasonable attorneys' fees, and an order enjoining Sargento's unlawful and deceptive acts. Even today, proposed Class members are purchasing the misrepresented Products, and they will continue to do so in the future unless Sargento's conduct is stopped.

## JURISDICTION AND VENUE

18. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). There are at least 100 members in the proposed Class. Plaintiff Phan is a citizen of California. On information and

CLASS ACTION COMPLAINT

belief, Defendant Sargento Foods Inc. is a citizen of Wisconsin. The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

19.     This Court has personal jurisdiction over Sargento. Sargento regularly conducts and transacts business in California, purposefully avails itself of the laws of California, markets its Products to consumers in California, and distributes its Products to numerous retailers throughout California.

20.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading labeling and advertising regarding the nature and quality of the Products and sales of the Products at issue, occurred within this District.

## **PARTIES**

21.     Defendant Sargento Foods Inc. is a Wisconsin business corporation that maintains its principal place of business in Plymouth, Wisconsin.

22.     Sargento manufactures and/or causes the manufacture of the Products and markets and distributes the Products in the United States, including in California. Sargento created and/or authorized the false and deceptive labeling and advertising of the Products.

23.     Plaintiff Phan is a citizen of the State of California and a resident of Santa Clara County.

24.     At all times mentioned herein, Plaintiff Phan was and is an individual consumer over the age of 18.

25.     Within the Class Period (as defined herein), Plaintiff Phan purchased Sargento's Products labeled "No Antibiotics," including Sargento Natural String Cheese Snacks and Sargento Sharp Cheddar Cheese Slices, from the following stores in San Jose, California: Lucky's

CLASS ACTION COMPLAINT

1   (565 W. Capitol Expy.); Target (879 Blossom Hill Rd.); and Safeway (4950 Almaden Expy.).

2   From 2018 to 2020, Phan purchased the above products at least once every two months.

3        26.    In deciding to make his purchases, Phan saw, relied upon, and reasonably believed

4   Sargento's "No Antibiotics" representations on the Product packaging. Examples of the Product

5   packaging that Phan saw and relied upon are shown below:



          CLASS ACTION COMPLAINT




27.    Plaintiff Phan was willing to pay more for Sargento's Products because he expected the Products to have been made without the use of antibiotics and to never contain antibiotics.

28.    Had Plaintiff Phan known at the time that Sargento's Products were made with milk from cows who were given antibiotics and that the Products sometimes contain antibiotics, he would not have purchased or continued to purchase the Products.

29.    Plaintiff Phan ceased purchasing the Products because Sargento was labeling its Products "No Antibiotics" when they are made with the use of antibiotics and sometimes contain antibiotics.

CLASS ACTION COMPLAINT

30.     Plaintiff Phan continues to purchase cheese products and intends to continue purchasing cheese products in the future, but he does not currently purchase Sargento's Products.

31.     Plaintiff Phan wishes to be able to continue purchasing Sargento's Products and, therefore, wishes to see them truthfully made without antibiotics. Moreover, Phan is aware that members of the proposed Class are currently purchasing, and will continue to purchase, Sargento's Products, unaware that the "No Antibiotics" representations are false, unless Sargento's conduct is enjoined.

## FACT ALLEGATIONS

**I.      Sargento Falsely Represents That the Products Are Made Without the Use of Antibiotics and Never Contain Antibiotics.**

32.     Sargento labels the Products "No Antibiotics." This label appears prominently on the front or back of the Product packaging.

CLASS ACTION COMPLAINT

1
2
3

33.     In an apparent effort to qualify the "No Antibiotics" label, the Products' packaging also includes the fine print statement: "Our cheese is made from milk that does not contain antibiotics." Examples of the Product packaging are shown below:

4
5
6
7
8
9
10
11
12
13
14
15

 

16
17
18

34.     Reasonable consumers interpret Sargento's "No Antibiotics" label to mean that its Products are made with milk from cows who were not given antibiotics and that the Products never contain antibiotics.

19
20
21

35.     A 2018 nationally representative consumer survey conducted by Consumer Reports Survey Group found that 67% of consumers believe the claim "no antibiotics" means that no antibiotics were administered to the animals under any circumstances.[10]

22
23

---

[10] *Natural and Antibiotics Labels Survey: 2018 Nationally Representative Phone Survey*, Consumer Reports Survey Group (May 1, 2018), https://advocacy.consumerreports.org/wp-

CLASS ACTION COMPLAINT

36.    This understanding is consistent with the United States Department of Agriculture Food Safety and Inspection Service's policy for use of the similar claim "antibiotics free" on food labels. Such a claim is permitted only with evidence that the source animals have not been administered antibiotics.[11]

37.    Sargento's packaging and advertising fail to inform consumers that the Products are made with milk from dairy farms that administer antibiotics to their cows. This is a material omission, given that Sargento prominently labels its Products with the phrase "No Antibiotics."

**II.    Sargento Sources Its Milk from Farms That Use Antibiotics, and the Products Sometimes Contain Antibiotics.**

38.    Sargento sources its Products from dairy farms that use antibiotics. Despite its "No Antibiotics" representations, Sargento does not attempt to ensure that the milk used in the Products comes only from cows who were never given antibiotics.

39.    In addition, at least some of the Products, in their final form as sold to consumers, still contain detectable levels of antibiotics, which are then ingested by consumers.

40.    Independent laboratory testing conducted in July 2020 has confirmed that Sargento's Products are made with milk from cows who are administered antibiotics. In testing of Sargento's Mild Cheddar sliced cheese product, which is marketed with the claim "No Antibiotics," the laboratory found detectable levels of the antibiotic sulfamethazine.

---

content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf [hereinafter *Natural and Antibiotics Labels Survey*].

[11] U.S. Department of Agriculture Food Safety and Inspection Service, *Labeling Guideline on Documentation Needed to Substantiate Animal Raising Claims for Label Submissions* (Dec. 2019).

CLASS ACTION COMPLAINT

### III.    Sargento's "No Antibiotics" Claims Are Material to Reasonable Consumers.

41.    Consumers are aware of, and concerned about, the health threat posed by antibiotic-resistant bacteria. The 2018 Consumer Reports survey found that most consumers are aware that antibiotic use in farmed animals may diminish their effectiveness in humans, and 43% of consumers were highly concerned about this.[12] (*See also supra* ¶¶ 1-5.)

42.    Given these concerns, consumers seek out and are willing to pay more for dairy products that they believe are made without the use of antibiotics. The 2018 Consumer Reports survey cited above found that more than 60% of consumers would pay more for animal products labeled as being raised without antibiotics.[13]

43.    Consumers further seek out and are willing to pay more for Products that are guaranteed to contain no antibiotics.

44.    Consumers are also concerned about antibiotic use in dairy farming because the inhumane practices and conditions are harmful to the cows' health and welfare, which necessitates the use of antibiotics. A 2015 Consumer Reports survey found that consumers deem it important that food not be produced through standard factory farm methods. For example, 84% of food shoppers believe it is "important" or "very important" to provide better living conditions for animals.[14]

### IV.    Sargento's Claims and Omissions Mislead and Harm Consumers.

45.    Sargento's conduct in labeling and advertising the Products with the claim "No Antibiotics" deceived and/or was likely to deceive the public. Consumers have been, and continue

---

[12] *Natural and Antibiotics Label Survey*, *supra* note 10 at 5.
[13] *Id.* at 4.
[14] *Natural Food Labels Survey: 2015 Nationally-Representative Phone Survey*, Consumer Reports National Research Center at 3, https://foodpolitics.com/wp-content/uploads/Consumer-Reports-Natural-Food-Labels-Survey-Report.pdf.

CLASS ACTION COMPLAINT

to be, deceived into believing that the Products are made with milk from cows who have not been given antibiotics, when in fact the Products come from dairy farms that use antibiotics.

46.     Consumers cannot discover the true nature of the Products from reading the label. Ordinary consumers do not have sufficient knowledge about the dairy industry to determine that antibiotics are used in the production of Sargento's Products marketed with "No Antibiotics" claims.

47.     Sargento deceptively and misleadingly conceals material facts about the Products, namely, that the Products contain milk sourced from dairy farms that use antibiotics, and that the Products sometimes contain antibiotics.

48.     Sargento knew what representations it made on the labels and advertising of the Products. It also knew how the Products were sourced and produced. Sargento thus knew, or should have known, the facts demonstrating that the Products were falsely advertised.

49.     The production process Sargento uses for the Products is known only to Sargento and its suppliers and has not been disclosed to Plaintiff Phan or to the class of consumers he seeks to represent.

50.     Sargento's concealment tolls the applicable statute of limitations.

51.     To this day, Sargento continues to conceal and suppress the true nature, identity, sources, and methods of production of its Products.

52.     In making the false, misleading, and deceptive representations and omissions at issue, Sargento also knew and intended that consumers would choose to buy, and would pay more for, products marketed with the claim "No Antibiotics," furthering Sargento's private interest of increasing sales of its products and decreasing the sales of its competitors' products that are truthfully marketed.

CLASS ACTION COMPLAINT

53.     Had Sargento not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, would have chosen competing products, and/or would not have purchased as much of the Products.

54.     Sargento's ongoing false and misleading labeling and advertising of the Products continues to cause harm to the consumers Plaintiff seeks to represent and will continue absent injunctive relief.

55.     Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold using false and misleading labeling and advertising.

## CLASS ALLEGATIONS

56.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

57.     This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

58.     The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated individuals within the United States (the "Class") defined as follows: All consumers who purchased Sargento's Products (as defined herein) in the United States within the applicable statute of limitations and until the date of class certification (the "Class Period").

59.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased Sargento's Products (as defined herein) in the following states during the Class Period (the "Multi-State Subclass"): Alabama, California, Connecticut, Florida, Illinois, Michigan,

Minnesota, Missouri, New Jersey, and New York.

60.     Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

61.     Plaintiff brings the Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

62.     Plaintiff reserves the right to amend the Class definition(s) if further information and discovery indicate that the Class definition(s) should be narrowed, expanded, or otherwise modified.

63.     All members of the Class were and are similarly affected by the deceptive labeling and advertising of Sargento's Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

**1.  Numerosity.**

64.     At this time, Plaintiff does not know the exact number of the Class members. Based on the wide distribution of Sargento's Products, Plaintiff believes that the Class comprises many thousands of consumers. The number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**2.  Commonality.**

65.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

CLASS ACTION COMPLAINT

(a)      Whether Sargento is responsible for the labeling and advertising at issue;

(b)      Whether the labeling and advertising of the Products was unfair, false, deceptive, fraudulent, and/or unlawful;

(c)      Whether Sargento breached a warranty created through the labeling and marketing of its Products; and

(d)      Whether Sargento's conduct, as set forth above, injured, and may continue to injure, Plaintiff and Class members.

**3.   Typicality.**

66.      Plaintiff's claims are typical of those of the Class, as the claims arise from the same course of conduct by Sargento, and the relief sought within the Class is common to the Class members. Plaintiff, like all members of the Class, relied on Sargento's false and misleading representations and purchased Sargento's Products, or purchased more of them, or paid more for the Products than he would have paid if the products had been properly labeled, and sustained injury from Sargento's wrongful conduct. Further, there are no defenses available to Sargento that are unique to Plaintiff.

**4.   Adequacy.**

67.      Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, and he has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the Class members. Undersigned counsel have represented consumers in a variety of actions seeking to protect consumers from fraudulent and deceptive practices.

CLASS ACTION COMPLAINT

### 5.   Predominance and Superiority of Class Action.

68.     The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

69.     Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

70.     Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

71.     Plaintiff is unaware of any difficulties in managing this case that would preclude proceeding as a class action.

72.     Certification also is appropriate under Rule 23(b)(2) because Sargento acted, or refused to act, on grounds generally applicable to the Class.

73.     Further, given the large number of consumers of Sargento's Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

1

2

3

**CAUSES OF ACTION**

**COUNT I**

**Violation of State Consumer Protection Statutes**
**(On behalf of the Multi-State Subclass)**

4       74.    Plaintiff repeats and realleges each and every allegation contained in the foregoing

5    paragraphs as if fully set forth herein.

6       75.    Sargento's unfair, false, misleading, and fraudulent practices in marketing the

7    Products, as alleged herein, violate each of the following state consumer protection statutes to the

8    extent that Sargento's Products have been marketed, and purchased by Multi-State Subclass

9    members, in the respective state:

10         a.  Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et seq.*;

11         b.  California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-
               1785 (including §§ 1770(a)(5), (a)(7), and (a)(9));

12

13         c.  California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code. § 17500 *et
               seq.*;

14         d.  California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210 (by
               violating, *inter alia*, CLRA §§ 1770(a)(5), (a)(7), and (a)(9) and FAL § 17500 *et
               seq.*);

15

16         e.  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b;

17         f.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*;

18         g.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2;

19         h.  Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903 *et seq.*;

20         i.  Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq.*;

21         j.  Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44 *et seq.*;

           k.  Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67;

22         l.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*;

23         m.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*;

n.   New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and

o.   New York Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349 & 350.

76.   Sargento violated these statutes by falsely and deceptively labeling and advertising the Products "No Antibiotics" when the Products are made with the use of antibiotics and when they sometimes contain antibiotics, and by omitting these material facts.

77.   At all material times, Sargento engaged in a scheme of offering the Products for sale to Plaintiff and other members of the Multi-State Subclass through, *inter alia*, commercial marketing and advertising, the Internet, the Products' packaging and labeling, and other promotional materials and offers for sale for the Products. The conduct was undertaken by Sargento in transactions intended to result in, and which did result in, the sale of goods to consumers.

78.   As more fully described above, Sargento's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers. Indeed, Plaintiff and the other Multi-State Subclass members were unquestionably deceived by the "No Antibiotics" label on the Products, as Sargento's marketing, advertising, packaging, and labeling of the Products misrepresent, omit, and/or obfuscate the true facts concerning the benefits, nature, and quality of the Products.

79.   Sargento knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive. Sargento acted willfully, wantonly, and with reckless disregard for the truth.

80.   Plaintiff and other Multi-State Subclass members are consumers who purchased the Products for personal, family, or household purposes.

CLASS ACTION COMPLAINT

81.     Sargento's deceptive labeling was material to Plaintiff's and the Multi-State Subclass members' decisions to purchase the Products, to purchase as much of them as they did, and to pay the requested price.

82.     Sargento's promotional materials were intended as inducements to purchase the Products and are statements disseminated by Sargento to Plaintiff and other Multi-State Subclass members that were intended to reach them.

83.     Plaintiff and the Multi-State Subclass members have suffered injury in fact and have lost money or property as a result of these violations because they purchased the Products, paid the requested price, and received less than what they bargained and/or paid for.

84.     Plaintiff and the other Multi-State Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Sargento's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

85.     Plaintiff and the other Multi-State Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

86.     There is no benefit to consumers or competition from deceptively marketing and labeling products like the Products, which are labeled with the claim "No Antibiotics" when this unqualified claim is false.

87.     The gravity of the consequences of Sargento's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical,

1    unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the

2    other Multi-State Subclass members.

3         88.    Sargento's conduct alleged in this Complaint constitutes unfair methods of

4    competition and unfair and deceptive acts and practices for the purpose of these state consumer

5    protection statutes.

6         89.    The misrepresentations and nondisclosures by Sargento of the material facts

7    detailed above constitute false and misleading advertising within the meaning of these statutes.

8         90.    As a result of the foregoing violations, Sargento has violated the proscription

9    against unlawful, fraudulent, and unfair conduct.

10        91.    Plaintiff and the Multi-State Subclass members are entitled to recover

11   compensatory damages, restitution, punitive and special damages, treble damages, attorneys' fees

12   and costs, and other appropriate injunctive and declaratory relief.

13        92.    Plaintiff and the Multi-State Subclass seek an order of this Court that includes, but

14   is not limited to, requiring Sargento to:

15             a.  Provide restitution to Plaintiff and the other Multi-State Subclass members;

16             b.  Disgorge all revenues obtained as a result of violations of these statutes;

17             c.  Cease its unlawful and deceptive acts, and

18             d.  Pay the attorneys' fees and costs of Plaintiff and the Multi-State Subclass.

19        93.    CLRA § 1782 and equivalent notice. On November 9, 2020, a CLRA demand

20   letter was sent on behalf of Plaintiff Phan to Sargento via certified mail that provided notice of

21   Sargento's CLRA violation and demanded that within 30 days from that date, Sargento correct,

22   repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices

23   complained of herein. The letter also stated that if Sargento refused to do so, a complaint seeking

damages in accordance with the CLRA would be filed. Sargento confirmed receipt of this letter on December 4, 2020, but has failed to provide the relief requested. Accordingly, pursuant to Cal. Civ. Code § 1780(a)(3) and equivalent statutes, Plaintiff Phan, on behalf of himself and all other members of the Multi-State Subclass, seeks compensatory damages, punitive damages, injunctive relief, and restitution of any ill-gotten gains due to Sargento's acts and practices.

## COUNT II

### Breach of Express Warranty
### (On behalf of the Class)

94.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

95.     Sargento provided Plaintiff and other Class members with a written, express "No Antibiotics" warranty.

96.     These affirmations of fact or promises by Sargento relate to the goods and became part of the basis of the bargain.

97.     Plaintiff and Class members purchased Sargento's Products believing them to conform to the express warranties.

98.     Sargento breached these warranties, resulting in damages to Plaintiff and other Class members, who bought Sargento's Products but did not receive the goods as warranted.

99.     As a proximate result of the breach of warranties by Sargento, Plaintiff and other Class members did not receive goods as warranted. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased Sargento's Products, or would have purchased Sargento's Products on different terms, or would have purchased fewer of Sargento's Products.

100.    Plaintiff and the Class members therefore have been injured and have suffered damages in an amount to be proven at trial.

## COUNT III

### Unjust Enrichment
### (In the Alternative, on Behalf of the Class)

101.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102.    As the intended, direct, and proximate result of Sargento's conduct, Sargento has been unjustly enriched through sales of Sargento's Products at the expense of Plaintiff and the Class members.

103.    Under the circumstances, it would be against equity and good conscience to permit Sargento to retain the ill-gotten benefits that they received from Plaintiff and the Class members, in light of the fact that the Products they purchased were not what Sargento represented them to be.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment on behalf of himself and the proposed Class as follows:

A.    An order certifying the proposed Class and Multi-State Subclass; appointing Plaintiff Phan as representative of the Class and Multi-State Subclass; and appointing Plaintiff's undersigned counsel as class counsel for the Class and Multi-State Subclass;

B.    A declaration that Sargento is financially responsible for notifying Class members of the pendency of this suit;

C.    An order enjoining Sargento's unlawful and deceptive acts;

CLASS ACTION COMPLAINT

D.      An award of disgorgement pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535 and equivalent statutes for the Multi-State Subclass members;

E.      Monetary damages and statutory damages in the maximum amount provided by law;

F.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

G.      An order awarding Plaintiff and other Class members reasonable costs and expenses of suit, including their attorneys' fees; and

H.      Any further relief as this Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff Phan hereby demands a trial by jury.

Dated: December 21, 2020

RICHMAN LAW AND POLICY

By: _____

Jaimie Mak (SBN 236505)
Of Counsel
jmak@richmanlawgroup.com
Kim Richman (*pro hac vice forthcoming*)
krichman@richmanlawgroup.com
535 Mission Street
San Francisco, CA 94105
Telephone: (718) 705-4579
Facsimile: (718) 228-8522

*Attorneys for Plaintiff Phan and Proposed Class*

CLASS ACTION COMPLAINT