1
2
3
4     UNITED STATES DISTRICT COURT
5     NORTHERN DISTRICT OF CALIFORNIA
6
7     QUYNH PHAN,                                Case No.  20-cv-09251-EMC
8            Plaintiff,
9         v.                                     ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANT'S
10    SARGENTO FOODS, INC.,                      MOTION TO DISMISS, AND
                                                 GRANTING IN PART AND DENYING
11           Defendant.                          IN PART DEFENDANT'S MOTION TO
                                                 STRIKE
12                                               Docket Nos. 16, 18
13

14         Plaintiff Quynh Phan has filed a class action against Sargento Foods Inc., alleging that the

15    company engaged in false advertising with respect to the sale of its dairy cheese products.

16    Currently pending before the Court are two motions filed by Sargento: (1) a motion to dismiss and

17    (2) a motion to strike class claims and allegations and to dismiss for lack of standing.  Having

18    considered the parties' briefs, as well as the oral argument of counsel, the Court hereby **GRANTS**

19    in part and **DENIES** in part the motion to dismiss and **GRANTS** in part and **DENIES** in part the

20    motion to strike.

21                    **I.        FACTUAL & PROCEDURAL BACKGROUND**

22         In the complaint, Plaintiff alleges as follows.

23         Sargento is a company that manufactures, markets, and/or distributes dairy cheese products

24    (the "Products").  *See* Compl. ¶ 22.  The packaging of the Products includes the label "No

25    Antibiotics*."[1]  *See* Compl. ¶ 26.  The label can appear on the front or the back of the packaging.

26    In either case, it is featured prominently.  At the bottom of the packaging (on the same side as the

27
_____
28    [1] Sometimes the label uses two asterisks instead of one.

label) or just below the label, the asterisk is explained as follows: "*Our cheese is made from milk that does not contain antibiotics."  *See* Compl. ¶ 26; *see also* Compl. ¶ 33.  The statement appears in small font.  *See* Compl. ¶¶ 26, 33.

According to Plaintiff, consumers interpret the "No Antibiotics*" label in at least one of two ways:

- The Products are made with milk from cows who were not given antibiotics.
- The Products never contain antibiotics.

*See* Compl. ¶ 34.  Plaintiffs assert that the label is false and misleading because (1) "[t]he Products are produced with milk from cows who receive antibiotics," Compl. ¶ 9, and (2) at least some Products actually contain antibiotics.  *See, e.g.*, Compl. ¶ 40 (alleging that, in July 2020, an independent laboratory tested Sargento's Mild Cheddar sliced cheese product and "found detectable levels of the antibiotic sulfamethazine").

During the relevant period, Plaintiff purchased two of the Products with the "No Antibiotics*" label: Natural String Cheese Snacks and Sharp Cheddar Cheese Slices.  Plaintiff purchased these products "at least once every two months."  Compl. ¶ 25.  In deciding to purchase the products, Plaintiff "saw, relied upon, and reasonably believed" the "No Antibiotics" label on the product packaging.  Compl. ¶ 26.  Plaintiff, as well as others, "paid more for the Products based upon the misrepresentations than they otherwise would have paid, and/or purchased the Products, or purchased more of the Products, when they would not have if they had known the truth."  Compl. ¶ 15; *see also* Compl. ¶ 53.

Based on, *inter alia*, the above allegations, Plaintiff has brought a nationwide class action.  *See* Compl. ¶ 58.  "Included in the Class, to the extent necessary, is a subclass of all persons who purchased Sargento's Products (as defined herein) in the following states during the Class Period (the 'Multi-State Subclass'): Alabama, California, Connecticut, Florida, Illinois, Michigan, Minnesota, Missouri, New Jersey, and New York."  Compl. ¶ 59.  Plaintiff asserts the following causes of action:

(1) Violation of various state consumer protection laws.  This claim is brought on behalf of the Multi-State Subclass and implicates the consumer protection laws of the states

2

1    identified above.

2    (2) Breach of express warranty.  This is a nationwide class claim.

3    (3) Unjust enrichment.  This is also a nationwide class claim.

4    ## II.    MOTION TO DISMISS (DOCKET NO. 16)

5    A.    Legal Standard

6    Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

7    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

8    complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

9    Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss

10   after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic*

11   *Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must

12   . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765

13   F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true

14   and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

15   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a

16   complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

17   allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

18   effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial

19   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

20   inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The

21   plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

22   possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

23   Because Plaintiff's claims sound in fraud, Federal Rule of Civil Procedure 9(b) is also

24   applicable.  Under Rule 9(b), "[i]n alleging fraud . . . , a party must state with particularity the

25   circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a

26   person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

27   B.    Consumer Protection Claim

28   For its consumer protection claim, Plaintiff maintains that the "No Antibiotics*" label is

false and misleading in two ways: (1) the Products are made with milk from cows who were given antibiotics and that (2) at least some of the Products actually do contain antibiotics. In its motion to dismiss, Sargento challenges both theories.

### 1. Cows Given Antibiotics

According to Plaintiff, the "No Antibiotics*" label is false and misleading because a reasonable consumer would understand the label to mean that the Products are made with milk from cows who were not given antibiotics when, in fact, the opposite is true. In response, Sargento argues that it is not plausible a reasonable consumer would have this understanding because the asterisk is explained on the package (on the same side as the label) as follows: "*Our cheese is made from milk that does not contain antibiotics." Sargento asserts that the plain meaning of this disclaimer is clear: The fact that the *milk* itself does not contain antibiotics says nothing about whether the *cows* who produced the milk were ever given antibiotics.[2]

The Court finds that there is a factual dispute as to what a reasonable consumer would understand from the label, thus making dismissal at 12(b)(6) inappropriate. Even assuming that a reasonable consumer would see and read the disclaimer in small font,[3] it is plausible that a reasonable consumer could still believe that there are no antibiotics in the milk *because* the cows producing the milk were not given antibiotics. *See Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1014 (N.D. Cal. 2018) (Seeborg, J.) (noting that "courts grant motions to dismiss under the reasonable consumer test only in rare situations in which the facts alleged in the complaint 'compel the conclusion as a matter of law that consumers are not likely to be deceived'"); *Gallagher v. Chipotle Mexican Grill, Inc.*, No. 15-cv-03952-HSG, 2016 U.S. Dist. LEXIS 14479, at *9 (N.D. Cal. Feb. 5, 2016) (stating that "dismissal is appropriate where 'the advertisement itself ma[kes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived'"); *cf. Friends of the Earth v. Sanderson Farms, Inc.*, No. 17-cv-03592-RS,

---

[2] Neither party disputes that the state consumer protection laws are predicated on what a reasonable consumer would understand.

[3] Many of the cases cited by the parties concern a "No Antibiotics"-type label without any disclaimer.

2018 U.S. Dist. LEXIS 220547, at *12 (N.D. Cal. Dec. 3, 2018) (stating that defendant's "focus on a close reading of the advertisement's words . . . is misplaced"; although "[a] lawyer may well catch this turn of phrase, . . . the reasonable consumer standard does not demand that consumers interpret advertisements the same way a judge interprets statutes"). It is plausible that a reasonable consumer would assume that, if a cow consumed antibiotics, the antibiotics would appear in its milk, even if, in fact, science may show that is not necessarily the case. It is not inconceivable that, drawing upon the publicized effect on human infants from the transmission of certain chemicals through mother's milk through the mother's consumption, consumers might assume a similar nexus between a cow's intake and its milk. Although Sargento asserts that "dairy products made from cows that are never treated with antibiotics are labeled with a different representation very familiar to American consumers: 'organic,'" Mot. at 2, that does not mean a reasonable consumer could not interpret *both* the label "no antibiotics" and the label "organic" to mean that a cow was never given antibiotics.

The Court therefore denies Sargento's motion to dismiss Plaintiff's first theory of false advertising because this is a matter that cannot be resolved on a motion to dismiss.

2.  <u>Never Contain Antibiotics</u>

According to Plaintiff, the label "No Antibiotics*" is also false and misleading because "at least some of the Products . . . still contain detectable levels of antibiotics." Compl. ¶ 9. In support, Plaintiff alleges that, in July 2020, an independent laboratory tested Sargento's Mild Cheddar sliced cheese product and "found detectable levels of the antibiotic sulfamethazine." Compl. ¶ 40.

Some of the arguments Sargento makes to challenge this theory of false advertising are not persuasive. For example, Sargento contends that Rule 9(b) requires particularity and Plaintiff has not provided any specifics about how the independent laboratory testing was done. This argument ignores the fact that Rule 9(b) requires particularity about the falsity only. *See United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (noting that, under Rule 9(b), "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well

as 'what is false or misleading about [the purportedly fraudulent statement], and why it is false'").[4] Here, Plaintiff has been specific about what is false – *i.e.*, the "No Antibiotics*" label is false because at least some of the Products actually contain antibiotics. That is enough for Rule 9(b). Nothing about Rule 9(b) suggests that Plaintiff must provide specifics about the means by which the falsity was revealed.

Sargento also argues that the false advertising claim is implausible because the independent laboratory testing on which Plaintiff relied in the complaint showed only a de minimis amount of antibiotic. *See* Def.'s RJN, Ex. 5 (in a different case filed by Plaintiff's counsel against Sargento, referring to the same independent laboratory testing in the applicable complaint (¶ 29) and providing specifics about that testing – *i.e.*, that 0.985 parts per billion of sulfamethazine were detected); Mot. at 16 (explaining that 0.985 ppb is the equivalent of one ounce in 7.75 million gallons). The gist of this argument is that a reasonable consumer would not be misled by the "No Antibiotics*" label because a reasonable consumer would understand that it would be nearly impossible to have *zero* antibiotics. In other words, a reasonable consumer would still see the "No Antibiotics*" label as accurate even if there were trace amounts of an antibiotic present. However, what a reasonable consumer would think is a factual dispute that cannot be resolved at the 12(b)(6) phase of proceedings. *Cf., e.g.*, *Berke v. Whole Foods Mkt.*, No. CV 19-7471 PSG (KSx), 2020 U.S. Dist. LEXIS 184346, at *33-34 (C.D. Cal. Sept. 18, 2020) (at 12(b)(6), disagreeing with defendant that a reasonable consumer could not understand a label that water was "pure" or "pristine" to mean that the water did not have arsenic in it just because arsenic is "naturally occurring"); *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-cv-110-JLS-JCSx, 2018 U.S. Dist. LEXIS 146380, at *17-18 (C.D. Cal. Aug. 20, 2018) (taking note of defendant's

---

[4] There are two reasons for the heightened pleading requirement: (1) "allegations of fraud 'must be specific enough to give defendants the notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong'"; and (2) the rule "'deter[s] the filing of complaints as a pretext for the discovery of unknown wrongs, . . . protect[s] [defendants] from the harm that comes from being subject to fraud charges, and . . . prohibit[s] plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Wellpoint*, 904 F.3d at 677. Neither of these reasons demands the kind of showing Sargento insists be shown here.

argument that, "many, if not all, agricultural products contain trace amounts of pesticide" and that plaintiff's "definition of the term '100% Pure' would essentially preclude any seller of agricultural products from using the term to describe their goods"; but stating that this argument of business difficulty "do[es] not go towards establishing what reasonable consumers would understand the terms '100% Pure' or 'Pure' to mean" – and, "[t]o the extent a reasonable consumer considers the honey production process and the prevalence of herbicide use in the modern world when evaluating the term 'Pure,' those involve factual issues that should be tested through discovery"); *Organic*, 284 F. Supp. 3d at 1014-15 (acknowledging defendant's contention that "a reasonable consumer would not interpret 'natural as stringently as the plaintiffs propose or be surprised to learn that [defendant's] products have trace amounts of synthetic materials like antibiotics" but finding a question of fact on the issue).

The Court acknowledges that there is case law to support Sargento's position. *See, e.g.*, *Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-cv-06664-BLF, 2020 U.S. Dist. LEXIS 185322, at *11 (N.D. Cal. Oct. 6, 2020) (in case where defendant's product was labeled "Natural" or "All Natural Ingredients," rejecting plaintiff's argument that "reasonable consumers interpret the word natural to mean a food product that is completely free of any trace pesticides"); *In re Gen. Mills Glyphosate Litig.*, No. 16-2869 (MJD/BRT), 2017 U.S. Dist. LEXIS 108469, at *16-17 (D. Minn. July 12, 2017) (holding that "it is not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label[;] [i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule"). But the Court finds this authority less persuasive.

Although Sargento's arguments above are not convincing, the Court nevertheless grants its motion to dismiss the second theory of false advertising because its argument that Plaintiffs lacks standing has merit. Plaintiff has expressly alleged that only *some* of Sargento's Products – not all or most Products – contain antibiotics. *See* Compl. ¶ 9 (alleging that "at least some of the Products, in their final form as sold to consumers, still contain detectable levels of antibiotics, which are then ingested by consumers"). Plaintiff has not alleged that Plaintiff actually purchased

one of these Products containing antibiotics. In the absence of that additional allegation, the Court concludes that Plaintiff has no standing to claim that the "No Antibiotics*" label was misleading. Notably, in *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197 (N.D. Cal. Mar. 16, 2020), Judge Orrick acknowledged that this specific situation would be an obstacle for the plaintiff. *See id.* at *19-20 (noting that, in two different cases, plaintiffs "failed to allege that 'all or even most' of the accused products were falsely advertised and therefore were required to allege that the particular products they purchased were part of a subset of accused products that were falsely advertised"; these plaintiffs "lacked standing because it was merely speculative whether they purchased" problematic products).

Plaintiff's standing is not saved by any implication that there is a systemic problem with Sargento's Products, from which one could infer that the Product Plaintiff purchased was also tainted. Plaintiff has alleged that antibiotics were detected in one Product (different from the one Plaintiff purchased) based on one test, but this allegation *by itself* is insufficient to show that all or most Products contain antibiotics. There is no indication that the single test of a single product is likely representative of other Sargento Products and, if so, why.

Accordingly, the Court dismisses Plaintiff's second theory of false advertising but gives Plaintiff leave to amend.

C.    Claims for Breach of Warranty and Unjust Enrichment

The parties largely agree that how the Court resolves the consumer protection claim should dictate how the Court resolves the remaining claims for breach of warranty and unjust enrichment. Accordingly, the Court's analysis above applies equally to the warranty and unjust enrichment claims.

D.    Monetary Equitable Relief

Finally, Sargento contends that, to the extent Plaintiff seeks monetary equitable relief, that claim should be dismissed because Plaintiff has failed to show that there is no adequate legal remedy for the alleged harm. The Court recently addressed a similar issue in a different case, *Julian v. TTE Technology, Inc.*, No. 20-cv-02857-EMC, 2020 U.S. Dist. LEXIS 215039 (N.D. Cal. Nov. 17, 2020):

In *Sonner v. Premier Nutrition Corp.*, 971 F.3d. 834 (9th Cir. 2020), the Ninth Circuit held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.* at 844. Notably, the court pointed out that the plaintiff in *Sonner* sought "the same sum in equitable restitution as 'a full refund of the purchase price' . . . as she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete . . . ." *Id.*

[Here,] it is not an unfair burden to require Plaintiffs to explain why legal remedies are inadequate in their pleading. *Gibson v. Jaguar Land Rover North America, LLC*, No. CV 20-00769-CJC(GJSx), 2020 U.S. Dist. LEXIS 168724, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (stating that "courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole"). Here, Plaintiffs have failed to explain how restitution could be different from damages. Plaintiffs have simply speculated that restitution and damages could be different (*e.g.*, as to disgorgement) – but even that speculation is questionable given that any profits subject to disgorgement under § 17200 would be limited. *See S. Cal. Water Co. v. Aerojet-General Corp.*, No. CV 02-6340 ABC (RCx), 2003 U.S. Dist. LEXIS 26534, at *44 (C.D. Cal. Apr. 1, 2003) (noting that "§ 17200 does not provide a remedy of nonrestitutionary disgorgement"; "[u]nder § 17200, restitution is limited to disgorgement of (1) money or property once in the plaintiff's possession and (2) money in which the plaintiff has a vested interest").

Finally, on the face of the complaint, it appears that what Plaintiffs' claim for damages and restitution are not really different. The FAC asserts Plaintiffs have been damaged because they "would have paid significantly less for [the televisions]" had they known the truth – or that they would not have purchased the televisions at all. FAC ¶ 120. The first measure is the same as what may be obtained as restitution. *See Brazil v. Dole Packaged Foods*, LLC, 12-cv-01831-LHK, 2014 U.S. Dist. LEXIS 157578, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014 (stating that "[t]he proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received"). As for the second measure, some courts have held that a full refund of the purchase price is not even available as restitution, *see Victor v. R.C. Bigelow, Inc.*, 2015 U.S. Dist. LEXIS 106924, 2015 WL 5672577, at *1 (N.D. Cal. Aug. 12, 2015) (stating that "[t]he law is clear in this District that '[t]he proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received, not the full purchase price or all profits'").

. . . . The Court dismisses the § 17200, § 17500, CLRA, and unjust enrichment claims to the extent they seek equitable relief because Plaintiffs have not demonstrated the inadequacy of a legal remedy. The dismissal, however, is without prejudice such that, should Plaintiffs uncover during discovery a basis for claiming that legal

remedies do not provide for adequate relief, they may seek to amend.

*Id.* at *9-13.

Plaintiff does not address *Julian*. Plaintiff simply argues that Plaintiff is "free to plead alternative remedial requests" and that it is premature for a court to decide the adequacy of a legal remedy on a motion to dismiss. Opp'n at 16. Both these arguments, however, were explicitly rejected in *Julian*. *See id.* at *10 (taking into account plaintiffs' contention that "Defendant's argument is premature and ignores that a plaintiff should typically be allowed to plead alternative remedies").

Therefore, the Court proceeds here as it did in *Julian* – *i.e.*, it dismisses the claim for relief but without prejudice so that Plaintiff may bring the claim back in should Plaintiff find facts, during discovery, showing that the legal remedy would not be adequate.

E.      Summary

Plaintiff's consumer protection, warranty, and unjust enrichment claims are dismissed in part. The claims are dismissed without prejudice to the extent Plaintiff's theory is that the "No Antibiotics*" label is false and misleading for lack of standing. Plaintiff is given leave to amend on this theory. However, Plaintiff may proceed with the other theory – *i.e.*, that the label is false and misleading because the Products at issue are made from milk that comes from cows who have been given antibiotics.

As for monetary equitable remedies, the Court dismisses the relief but without prejudice.

### III.      MOTION TO STRIKE AND DISMISS (DOCKET NO. 18)

In its second motion, Sargento primarily moves to strike class claims and allegations. Plaintiff's class claims are as follows:

(1) Violation of state consumer protection laws (brought on behalf of a multi-state subclass).

(2) Breach of express warranty (brought on behalf of a nationwide class).

(3) Unjust enrichment (brought on behalf of a nationwide class).

For the two nationwide claims, Sargento criticizes Plaintiff for failing to identify what state law governs. Sargento also argues that, under a choice-of-law analysis, the laws of all 50 states

1 would apply (*i.e.*, wherever a consumer purchased the Sargento Product, that state's law applies),

2 and that would bar class certification because individualized issues would predominate.

3       For the multi-state claim, Sargento makes a similar argument; that is, that there are too

4 many differences in the various state's laws such that individualized issues would predominate.

5 A.    <u>Nationwide Claims</u>

6       For the nationwide claims, Plaintiff does not dispute that, under a choice-of-law analysis,

7 the laws of all 50 states would apply. Indeed, Plaintiff expressly states: "the law applicable to

8 each class member is the law of the state in which they purchased the Sargento Product." Opp'n

9 at 8. Plaintiff, however, argues that it is premature to decide now – at the outset of this litigation –

10 what impact this will on the claims. In other words, Plaintiff takes the position that the issue

11 should be deferred until class certification.

12       As Plaintiff notes, many cases have reiterated the following principle: "'motions to strike

13 class allegations are disfavored because a motion for class certification is a more appropriate

14 vehicle for arguments about class propriety.'" *Marsh v. First Bank of Del.*, No. 11-cv-05226-

15 WHO, 2014 U.S. Dist. LEXIS 17577, at *51 (N.D. Cal. Feb. 7, 2014). However, that does not

16 mean that a motion to strike class claims or allegations cannot be decided at the pleading stage.

17 *See id.* at *50-51 (noting that "[a] motion to strike class allegations may be appropriate to dispense

18 with issues well before trial or before discovery is taken"). Nevertheless, courts, including this

19 one, have examined the degree of factual development needed to resolve the particular issue. If

20 the issue is purely legal in nature, then it may make little sense not to wait until class certification

21 proceedings to resolve it given the burdens class certification and other class-related discovery

22 imposes on the parties. As the Sixth Circuit noted in one case, while "'it may be necessary for the

23 court to probe behind the pleadings before coming to rest on the certification question,'"

> [t]he problem for the plaintiffs [here] is that we cannot see how
> discovery or for that matter more time would have helped them. To
> this day, they do not explain what type of discovery or what type of
> factual development would alter the central defect in this class
> claim. The key reality remains: Their claims [for false advertising
> in violation of consumer protection law] are governed by different
> States' laws, a largely legal determination, and no proffered or
> potential factual development offers any hope of altering that
> conclusion, one that generally will preclude class certification.

*Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *see also Soo v. Lorex Corp.*, No. 20-cv-01437-JSC, 2020 U.S. Dist. LEXIS 164664, at *29 (N.D. Cal. Sep. 8, 2020) (noting that "Plaintiffs do not identify any discovery that might permit them to bring claims under the laws of state to which they have no connection; to defer ruling and permit nationwide discovery would therefore merely waste time and money").

The Court agrees with the Sixth Circuit's comments in *Pilgrim*, and therefore addresses the merits of Sargento's position – *i.e.*, that the law on unjust enrichment and the law on breach of express warranty vary too much from state to state such that individualized issues predominate and that is a matter suitable for determination at this stage.

      1.   <u>Unjust Enrichment</u>

The Court finds Sargento's argument on the unjust enrichment claim meritorious. Although Plaintiff does cite cases in support – in which courts certified a nationwide class for an unjust enrichment claim – those cases were largely decided before the Ninth Circuit's decision in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012). As Sargento points out, in *Mazza*, the Ninth Circuit expressly noted that "[t]he elements necessary to establish a claim for unjust enrichment . . . vary materially from state to state." *Id.* at 591 (citing Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 Am. U. L. Rev. 547, 558-60 (1986)[5]).

---

[5] In the law review article, Ms. Kovacic notes, *inter alia*, that a claim of quantum meruit may be based on a contract implied in law or on a contract implied in fact, which can lead to different remedies; that such a claim may not have any defined elements comprising the claim; that, and where there are elements, there is not a single set of elements by which courts may obtain consistent results (especially as quantum meruit can be based on a contract implied in law or a contract implied in fact). *See also Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833, 2015 U.S. Dist. LEXIS 74846, at *82-83 (E.D. Pa. June 10, 2015) ("First, states apply statutes of limitations of varying lengths to unjust enrichment claims. Second, states have different rules as to when and how the statute of limitations accrues. Third, some states do not recognize unjust enrichment as an independent cause of action. Fourth, some but not all states require a plaintiff to demonstrate that they lack an adequate remedy at law. Fifth, some states require that a plaintiff establish that the benefit was directly conferred on the defendant. Sixth, the states also vary as to the level of misconduct, if any, a plaintiff must prove. Lastly, the states follow different rules as to the availability of defenses, including laches and unclean hands."); *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 304 (D. Conn. 2009) ("[Regarding unjust enrichment,] [s]ome state require proof of an actual loss or impoverishment, while others do not. Some states allow an unjust enrichment claim only in the absence of a contract. Some states allow a claim to go forward only 'where there is no adequate remedy at law.' Some stats require the defendants to have engaged in wrongdoing, while others do not. Sometimes, even courts within a single state offer varying interpretations of the standards of unjust enrichment claims. Finally, some states use

Admittedly, the court made this statement in discussing whether, *for choice of law purposes*, there were material differences in state law. However, the Ninth Circuit went on to hold that the laws of the 50 states would apply to the class claim and remanded to the district court for further proceedings, noting as follows:

> We express no view whether on remand it would be correct to certify a *smaller class* containing only those who purchased or leased in California, or to certify a class with members more broadly but with *subclasses* for class members in different states, with different jury instruction for materially different bodies of state law.

*Id.* at 594 (emphasis added). Thus, implicitly, the Ninth Circuit was highly skeptical of a nationwide unjust enrichment claim where the laws of all 50 states are implicated (even if it did not foreclose a class implicating the laws of fewer than all 50 states).

Furthermore, at least one judge in this District has interpreted *Mazza* in this way. Specifically, Judge Gonzalez Rogers noted as follows:

> It is true that district courts – including courts in this District – have certified nationwide unjust enrichment classes. Plaintiffs, though, cannot point to a single case in this Circuit to do so since the Ninth Circuit addressed the issue in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012). This is unsurprising given that, in *Mazza*, the Ninth Circuit unequivocally held that the "elements necessary to establish a claim for unjust enrichment . . . vary materially from state to state." It is hard to imagine a clearer directive from our Circuit on this issue.

*Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015). And because the laws of all 50 states are implicated, Plaintiff has not sufficiently shown that common questions of fact or law predominate over individualized issues – or that a class action would be manageable. *See Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 657-58 (N.D. Cal. 2019) (Orrick, J.) (denying plaintiffs'

---

three elements, some have a five part of our part test, while others use one or two elements."); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008) ("[T]here are differences nationwide in the very definition of unjust enrichment and its availability as a remedy. Some states preclude such claims when an adequate legal remedy is available, and many states say the existence of an enforceable contract will preclude an unjust enrichment claim."); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("[V]ariances exist in state common laws of unjust enrichment. The actual definition of 'unjust enrichment' varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.").

motion for certification of a nationwide unjust enrichment class because the laws of all 50 states would apply and therefore "plaintiffs cannot meet their burden to show that common questions of fact or law predominate over individualized questions as required by Rule 23(b)(3)"); *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 353 (E.D.N.Y. 2016) (holding that the law of all 50 states would apply to the plaintiffs' nationwide unjust enrichment claim and that the variation in state law on unjust enrichment precluded class certification); *Spencer*, 256 F.R.D. at 304 (holding the same; underscoring that, "[i]n contrast to the legal issues underlying breach of contract claims, which exhibit substantial uniformity from state to state, unjust enrichment claims do not" which reflects the fact that a breach-of-contract claim is based on a voluntary agreement whereas an unjust enrichment claim is based on equity). Notably, many courts have reached this conclusion on an unjust enrichment claim even prior to formal class certification proceedings, *see, e.g.*, *Tromble v. W. Dig. Corp.*, No. 4:20-cv-08102-YGR, 2021 U.S. Dist. LEXIS 100778, at *4-5 (N.D. Cal. May 27, 2021) ("'[W]hile the Court agrees that whether a nationwide class claim can be stated is typically addressed during class certification, they have been routinely narrowed after the Ninth Circuit's ruling in *Mazza* . . . .' Indeed, the Court recently granted a request to strike similar nationwide class allegations of unjust enrichment in *Pistacchio v. Apple Inc.*, 4:20-cv-7034-YGR, 2021 U.S. Dist. LEXIS 47071, 2021 WL 949422, at *3 (N.D. Cal. Mar. 11, 2021)."); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, No. 20-cv-00337-EMC, 2021 U.S. Dist. LEXIS 69643, at *119 (N.D. Cal. Apr. 9, 2021) ("In light of *Mazza*, the Court finds that Plaintiffs cannot assert a nationwide claim for unjust enrichment under California law."), although, admittedly, other courts have reached a different conclusion. *See, e.g.*, *Wallace v. SharkNinja Operating, LLC*, No. 18-cv-05221-BLF, 2020 U.S. Dist. LEXIS 40594, at *45 (N.D. Cal. Mar. 9, 2020). ("The Court agrees that *Mazza* is binding, and that choice of law issues might ultimately preclude a nationwide class. But as *Mazza* itself demonstrates, a detailed and fact-intensive inquiry is necessary to determine the substantive law applicable to class members' claims. The Court is also mindful that dismissing or striking class allegations at the pleading stage is rare."); *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-cv-00887-HSG, 2015 U.S. Dist. LEXIS 105545, at *4 (N.D. Cal. Aug. 11, 2015) ("Whether California law differs from the laws of other states in a way that is material to this

litigation is not a proper inquiry at the pleading stage. Such a deeply factual inquiry is more

appropriately addressed at the class certification stage, which was, incidentally, the posture of the

*Mazza* action when it was appealed to the Ninth Circuit.") (emphasis omitted); *Clancy v. Bromley*

*Tea Co.*, 308 F.R.D. 564, 572-73 (N.D. Cal. 2013) ("Such a detailed choice-of-law analysis is not

appropriate at this stage of the litigation. Rather, such a fact-heavy inquiry should occur during

the class certification stage, after discovery. *Mazza*, of course, will be relevant to the decision

whether to certify any proposed class or sub-class. But at this early stage of the litigation, 'it

would be premature to speculate about whether the difference in various states' consumer

protection laws are material in this case.'"). However, this case presents the extreme situation in

which a single plaintiff seeks to certify one entire nationwide class involving 50 different state

laws, not, *e.g.*, a subset of states grouped into discrete subclasses. Furthermore, as noted above,

Plaintiff has not demonstrated that a fact-intensive inquiry would be necessary here. Thus, the

cases which have refused to certify a nationwide class for unjust enrichment claims are

particularly apt.

    2.   Breach of Express Warranty

      Plaintiff fares no better on the claim for breach of express warranty. As Sargento points

out, in *Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 636 (N.D. Cal.

2015) (Chen, J.), this Court – post-*Mazza* – considered a nationwide claim for breach of express

warranty. The Court did a choice-of-law analysis (noting, *e.g.*, that there were material

differences in state law regarding the privity, notice, and reliance requirements)[6] and concluded

that

> California law does not uniformly apply to the entire class; rather
> the governing law for the express warranty claim will be based on
> where the purchaser of the . . . product resided. And because the
> laws of multiple jurisdictions is thereby implicated, [defendant]
> correctly contends that there is a predominance/manageability

---

[6] For instance, some states require privity between the plaintiff and the defendant, while other
states do not. *See Tasion*, 308 F.R.D. at 636 (comparing Alabama and North Carolina law with
California law). Some states require notice but others do not, and, for those that require notice,
some require pre-litigation notice but others do not. *See id.* (comparing California law with laws
of other states). Finally, some states require reliance or something similar, but others do not. *See
id.* at 636-37 (comparing California and Texas law with law of Ohio and Pennsylvania).

problem that precludes certification of a Rule 23(b)(3) class.

*Id.* at 638.  Other district courts in the Ninth Circuit have reached similar holdings.  *See, e.g.*:

- *Amavizca v. Nutra Mfg., LLC*, No. 8:20-cv-01324-RGK-MAA, 2021 U.S. Dist. LEXIS 36009, at *26-30 (C.D. Cal. Jan. 27, 2021) (denying plaintiff's motion to certify a nationwide class for breach of warranty and unjust enrichment claims because the laws of all 50 states would apply and plaintiff "failed to meet his burden to establish predominance and demonstrate a suitable and realistic plan for trial").

- *Tsonev v. Kia Motors Am., Inc.*, No. SACV 16-01020-CJC(DFMx), 2016 U.S. Dist. LEXIS 192698, at *14-15 (C.D. Cal. Nov. 9, 2016) (taking note of "several material differences between states with regard to express warranty causes of action, specifically with regard to how states analyze privity, reliance, and notice"; "[p]laintiff makes no effort to argue that the conflicting state laws Kia identified do not exist or do not preclude class certification" and therefore striking the nationwide class).

- *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-1363-BLF, 2016 U.S. Dist. LEXIS 107938, at *31-33, 40 (N.D. Cal. Aug. 15, 2016) (holding that laws of 50 states must be applied to, *inter alia*, express warranty claim; because express warranty law "varies across the 50 states" – *e.g.*, on privity, reliance, and notice – common questions did not predominate).

- *Czuchaj v. Conair Corp.*, No. 13-cv-1901-BEN (RBB), 2016 U.S. Dist. LEXIS 42788, at *10 (S.D. Cal. Mar. 30, 2016) (noting that, "[a]lthough material differences in state laws do not automatically overcome the predominance and superiority requirements in Rule 23(b)(3), here they do[;] [w]hether the Model 259 was defective and whether the implied warranty of merchantability was breached were the two common questions that the Court previously found suitable for a class action" but, "[i]n light of the application of each state law to this case, more individualized questions arise")

- *Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568, 572 (N.D. Cal. 2015) (noting that "the court found that California law could not be applied to a nationwide class, because a conflict existed between California's express warranty law and that of other states, and that the interests of those other states outweighed California's interest in applying its laws on a nationwide basis[;] [t]hus, because California law could not be used on a classwide basis, individual questions of law would predominate over common ones").

*Compare Kaupelis v. Harbor Freight Tools USA, Inc.*, No. SACV 19-1203 JVS (DFMx), 2020 U.S. Dist. LEXIS 186249, at *38-39 (C.D. Cal. Sep. 23, 2020) (holding that multistate implied warranty class could be certified; even though defendant claimed "differences between the statutes of limitations, requirements of notice, and requirements for privity among the states," plaintiffs "demonstrated why each of these differences does not bar class certification" – *e.g.*, plaintiffs defined the class "so that it does not impair the interest of any state as represented in their statutes of limitations," and "chainsaws [were sold] directly to class members . . . so privity would be uniformly satisfied").

For the same reason the Court refuses to certify a nationwide class for an unjust enrichment claim brought by a single named plaintiff, it refuses to certify a nationwide class for a breach-of-warranty claim.

3.     Summary

For the reasons stated above, the Court strikes both the nationwide unjust enrichment claim as well as the nationwide warranty claim. Plaintiff has leave to amend to assert a narrower class.

B.     Multistate Claim: Violation of Consumer Protection Laws of Ten States

For the consumer protection claim, Plaintiff asserts a multistate class – *i.e.*, the laws of ten different states are implicated. Those states are: Alabama, California, Connecticut, Florida, Illinois, Michigan, Minnesota, Missouri, New Jersey, and New York. *See* Compl. ¶ 59. It appears that Plaintiff selected these ten states based on a Seventh Circuit case, which noted that (1) these ten states all have "Little FTC Acts" patterned on the Federal Trade Commission Act and (2) all their statutes "'all require plaintiffs to prove that the relevant labels are likely to deceive

reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020).

But *Bell* is not dispositive.  Although there may be some significant commonalities among the consumer protection laws of the ten states, there are no significant differences.  Notably, *Bell* included the statement that "[t]he core prohibitions of these laws are interpreted for the most part interchangeably, *and the parties have not identified any differences relevant to these appeals.*"  *Id.* at 475 (emphasis added).  Here, Sargento has identified differences in the consumer protection laws – *e.g.*, on whether scienter is required, whether reliance is required, whether damages are permitted, whether a misrepresentation must be material, whether there are procedural requirements, and what is the applicable statute of limitations.  *See* Garganta Decl., Ex. 2 (chart on "Variations in State Consumer Protection and Deceptive Trade Practice Laws").  For instance:

- Scienter.  In *Mazza*, the Ninth Circuit noted that California's consumer protection law (the UCL and the CLRA) does not have a scienter requirement but other states' consumer protection laws do – including, *e.g.*, New Jersey.  *See Mazza*, 666 F.3d at 591 (citing N.J. Stat. § 56:8-2).  Sargento has also shown that Connecticut does not have a scienter requirement, *see Cheshire Mortg. Serv., Inc. v. Montes*, 223 Conn. 80, 106 (1992) (stating that "[a] party need not prove an intent to deceive to prevail under CUTPA [Connecticut Unfair Trade Practices Act]"), but that Alabama does. *See* Ala. Code § 8-19-13 (providing that "[a]ny person against whom any civil action or proceeding is brought pursuant to this chapter shall have a defense to such action or proceeding upon a showing by a preponderance of the evidence presented that such person did not knowingly commit any act or knowingly engage in any activity which constitutes a violation of any provision of this chapter").  This Court has previously noted that Minnesota consumer protection law does not have a scienter requirement.  *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1020 (N.D. Cal. 2018) [hereinafter *FCA*] (noting that, in *Church of the Nativity of Our Lord v. WatPro,*

*Inc.*, 474 N.W.2d 605, 612 (Minn. Ct. App. 1991), the court stated: "'Minnesota courts have held that a finding of negligent or unintentional misrepresentation violates'" the Minnesota Consumer Fraud Act)).

- <u>Reliance</u>. In *Mazza*, the Ninth Circuit noted that California's consumer protection law has a reliance requirement while some other states' consumer protection statutes do not – including Florida, New Jersey, and New York. *See Mazza*, 666 F.3d at 591 (citing cases from these states). Connecticut also does not require reliance. *See Izzarelli v. R.I. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 176 (D. Conn. 2000) (stating that, "[u]nlike a claim of fraud, CUTPA does not require reliance or a claim that the misrepresentation became part of the basis of the bargain[;] [u]nder CUTPA, if the message is false, then it is a deceptive act without inquiry into whether the consumer actually believed the message or whether the consumer acted reasonably in relying on it").

In response, Plaintiff fails to address any of these differences, except for the statute of limitations (arguing that the difference in the statute of limitations can easily be addressed as an administrative matter). Rather than addressing the differences, Plaintiff now takes the position that there should be certification of ten different subclasses (one for each of the ten states). *See* Opp'n at 11 ("Plaintiff Phan has pleaded the multi-state subclass precisely in order to represent subclass members under their own state statutes."). Assuming that it would be manageable to have ten subclasses with varying substantive legal elements, Sargento's motion raises the vexing question of whether the Court presently should consider Plaintiff's standing to prosecute the claims of subclass members from other states or instead defer the question and analyze the issue as a matter for class certification (*e.g.*, commonality, typicality, adequacy).

Plaintiff contends that this issue would be better addressed in the context of class certification. *See generally In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1069 (N.D. Cal. 2015) (noting that courts have differed as to "whether differences between a named plaintiff's claims and the unnamed class members' claims should be treated as a standing issue [pre-certification] *or* one of adequacy and typicality under Federal Rule of Civil Procedure

23") (emphasis added). In support, Plaintiff notes that this Court deferred ruling on the same issue until class certification in *FCA*, 295 F. Supp. 3d at 953-56. In so holding, the Court relied on a Ninth Circuit decision, *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015).

In response, Sargento asserts that the issue can still be addressed at the pleading stage, as many courts (but not all) have held post-*Melendres*. For example, in *Jones v. Micron Technology, Inc.*, 400 F. Supp. 3d 897 (N.D. Cal. 2019), Judge White noted as follows:

> In [*Melendres*], the Ninth Circuit considered an appeal from a district court judgment (following a bench trial) against Sheriff Joseph Arpaio and the Maricopa County Sheriff's Office, enjoining them from making traffic stops based on a car occupant's race. The injunction applied to stops made during "saturation patrol" (when the defendant officers "saturated" a particular area for the purpose of enforcing immigration laws) and "nonsaturation patrol." In support of their request to partially decertify the class, the defendants argued that the remaining named plaintiffs, who were stopped during saturation patrols, lacked Article III standing to bring constitutional claims on behalf of class members stopped during nonsaturation patrols.

> Unlike the instant case, *Melendres* did not confront a situation where named plaintiffs brought claims under the laws of multiple states where they did not reside and where they were not injured: in *Melendres*, all plaintiffs alleged that they suffered the same constitutional injury, only in different factual circumstances. Here, because Plaintiffs bring claims under the laws of multiple states (some antitrust and some not), Plaintiffs technically invoke different legally protected interests.

> The Court is here called upon to examine whether the named Plaintiffs have standing to bring certain claims, not standing "to obtain relief for unnamed class members" for the same injury. Plaintiffs must show they have standing for each claim they raise, and Plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection.

*Id.* at 909.

Judge White thus disagreed with this Court's approach in *FCA* but added that he also found *FCA* factually distinguishable.

> In that case, there were only seven state laws without named plaintiff representatives. Judge Chen explained that, even if *Melendres* "did not impose a per se rule," it would be appropriate in the case then before him to defer standing analysis because forty-three of the state laws invoked by the complaint had corresponding plaintiff representatives. Judge Chen was therefore not concerned, as he had been in an earlier case [*Carrier IQ*], that he was

20

> "subjecting the [defendants] to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws."

*Id.* at 910. Finally, Judge White noted that post-*Melendres*, many courts, "at the pleading stage of a putative class action, have dismissed sister state claims based on the named plaintiff's standing." *Id.*

Taking into account the post-*Melendres* authority, the Court revisits its earlier statement in *FCA* that *Melendres* "*requires* courts in the Ninth Circuit to apply the 'class certification approach.'" *FCA*, 295 F. Supp. 3d at 955 (emphasis added). As this Court previously held in *Carrier IQ* and as it suggested as an alternative holding in *FCA*, *Melendres* does not "impose a per se rule"; rather, "district courts retain discretion to address standing before or after class certification in the 'sister state' law scenario." *Id.* at 956.

In determining whether the issue should be analyzed as a question of standing properly addressed prior to certification or instead one of *e.g.* adequacy and typicality at certification, the Court recognizes that there is

> a "'growing consensus' among lower courts . . . that class certification should indeed be decided first 'where its outcome will affect the Article III standing determination.'" Rubenstein, supra, § 2:2 (quoting *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012). As the Seventh Circuit has noted:
>
> > once a class is properly certified, statutory and Article III standing requirements must be assessed *with reference to the class as a whole, not simply with reference to the individual named plaintiffs. The certification of a class changes the standing aspects of a suit*, because "[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff."
>
> *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). The Ninth Circuit has similarly recognized that "once a class has been certified, 'the class of unnamed persons described in the certification acquire[s] a legal status separate from the representative.'" *Bates*, 511 F.3d at 987 (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)).\

*Carrier IQ*, 78 F. Supp. 3d at 1071-72 (emphasis added).

In a thoughtful opinion, the court in *In re McCormick & Co.*, 217 F. Supp. 3d 124, 144 (D.D.C. 2016) observed:

> It is more logical to consider named plaintiffs' ability to raise other

21

state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than a question of standing. Generally, the named plaintiffs in a class action do not have individual standing for all of the claims that they raise, because one individual does not have standing to claim injury to another individual. Therefore, standing analysis cannot address whether one plaintiff should be able to bring claims on behalf of others. In contrast, "the requirements of Rule 23(a) – commonality, typicality, and adequacy – exist to test the relationship between the named plaintiff's claims and those of the class." Thus, when defendants are "not challenging Plaintiffs' standing to bring their own claims" but rather "their standing to bring claims on behalf of the class," "[t]his question would be appropriately, and more efficiently addressed at the class certification stage."

Whether the named plaintiffs can adequately represent unnamed class members with claims under other states' laws depends on how variable the laws are. If the laws are similar enough, or if they can be grouped into a small number of categories with named plaintiffs representing each category, it may be unnecessary to have a named plaintiff from every state.

*Id.* at 144; *cf. Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998) (stating that "[v]ariations in state law do not necessarily preclude a 23(b)(3) action, but class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members"); *In re US FoodServ. Pricing Litig.*, 729 F.3d 108, 126-27 (2d Cir. 2013) ("agree[ing] that putative class actions involving the laws of multiple states are often not properly certified pursuant to Rule 23(b)(3) because variation in the legal issues to be addressed overwhelms the issues common to the class," but "these concerns are lessened where the states' laws do not vary materially").

Nevertheless, the Court holds that, in the instant case, it is more appropriate to decide the issue now, prior to formal class certification proceedings. Here, as noted above, there are substantial variations in the consumer protection laws of the ten states at issue. Although Plaintiff suggests the court certify ten subclasses, this underscores the problematic nature of the request that Plaintiff singularly be appointed to be the named representative for each of these subclasses, even though Plaintiff has had no involvement with the other nine states and even though there are substantial differences in the laws asserted. Under these circumstances, whether it be cast as a standing question or an early adjudication of prospective class certification, the Court exercises its discretion to hold that Plaintiff, on this record, cannot represent unnamed class members in states outside of California. *See Jones*, 400 F. Supp. 3d at 911 (holding that plaintiffs "lack standing to

bring claims under the laws of the twenty jurisdictions invoked by the Complaint where they do not reside and have alleged no injury"); *Corcoran v. CVS Health Corp.,* No. 15-CV-3504 YGR, 2016 U.S. Dist. LEXIS 99797, at *7 (N.D. Cal. July 29, 2016) (noting that, "[a]lthough plaintiffs allege standing properly to bring the common law claims under the laws of the thirteen jurisdictions in which they reside and/or filled prescriptions, it does not necessarily follow that they allege standing properly under the laws of the thirty-eight other jurisdictions"); *Johnson v. Nissan N. Am., Inc.,* 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017) (Orrick, J.) ("opt[ing] . . . to require that plaintiffs present named class representatives who possess individual standing to assert each stat law's claims against Nissan[;] [i]n this case, plaintiffs have two named class representatives in two states purporting to represent a nationwide class"); *Fenerjian v. Nongshim Co.,* 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014) (Orrick, J.) (noting that none of the five plaintiffs "resides in, or suffered an injury in, the 24 states identified above" and therefore they "lack standing to assert claims based on those states' laws").

C.      Summary

As noted above, the Court strikes the nationwide unjust enrichment claim as well as the nationwide warranty claim but gives Plaintiff leave to amend to assert a narrower class. On the multistate consumer protection claim, even if Plaintiff has set forth ten state subclasses, Plaintiff may not assert and serve a named representative of non-California claims. At this point, Plaintiff may only represent a California "subclass." Plaintiff, however, may amend if Plaintiff can bring in individuals who can served as putative representatives for other states to address the problems discussed herein.

## IV.      CONCLUSION

Sargento's motion to dismiss is granted in part and denied in part. Plaintiff has leave to amend the second false advertising theory. Plaintiff does not, at this juncture, have leave to amend with respect to monetary equitable remedies but is not precluded from asking for leave to amend in the future.

Sargento's motion to strike is granted in part and denied in part. The nationwide claims are dismissed without prejudice; Plaintiff has leave to amend to assert a narrower class for the

unjust enrichment and warranty claims. On the multistate claim, Plaintiff may proceed with only a California "subclass" but has leave to amend.

If Plaintiff decides to amend, the amended complaint must be filed no later than June 30, 2021. Sargento has until July 28, 2021 to respond to the amended complaint or, if no amended complaint is filed, to the original complaint.

This order disposes of Docket Nos. 16 and 18.

**IT IS SO ORDERED**.

Dated: June 2, 2021

_____
EDWARD M. CHEN
United States District Judge